IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANDREW H. MYERS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:10cv131 (AJT/JFA) |
| SEUNG HEUN LEE, *et al.* | ) ) ) |
| Defendants. | ) ) ) |

## MEMORANDUM OPINION

In this action, plaintiff Andrew Myers ("Myers" or "Plaintiff") claims that he was the victim of lies and manipulation that caused him to quit his job, isolate himself from his family and friends, and spend tens of thousands of dollars on inherently fraudulent self-improvement therapies. According to Myers, the "Dahn Organization," a network of entities, many of which are defendants in this matter, falsely promised Myers healing and self-awareness while actually subjecting him and other "clients" to "thought reform exercises" designed to impair his judgment and encourage him to give money to the Dahn Organization in order to sustain the lavish lifestyle of its leaders, primarily Seung Heun Lee, the "Grand Master" of the Dahn Organization. Based on these allegations, Myers filed a ten count complaint ("Complaint") on February 16, 2010, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal wage and hour law violations, common law fraud, infliction of emotional distress, and related torts. Before the Court for ruling are six motions to dismiss filed by the eight named defendants

challenging the legal sufficiency of all but the federal wage and hour claims (counts III and IV). The Court held a hearing on the motions on June 4, 2010.

The defendants, as alleged in the Complaint, are:

1. Seung Heun Lee (hereinafter "Ilchi Lee" or "Lee");

2. Dahn World Co., Ltd. (hereinafter "Dahn World"), which provides internet and computer services for the Dahn Organization and owns 74% of defendant Dahn Yoga and Health Centers, Inc.;

3. Dahn Yoga & Health Centers, Inc. (hereinafter, "DYHC"), which operates directly or is affiliated with nearly one thousand Dahn yoga centers worldwide, including defendant Dahn Yoga & Healing Family Center, in Alexandria, Virginia;

4. Dahn Yoga & Healing Family Center (hereinafter "ADYC"), located in Alexandria, Virginia, which first introduced Myers to the Dahn Organization and where Myers later worked;

5. Tao Fellowship, of which Lee is a director and which owns and operates mediation and retreat centers, youth camps, and "healer schools" and where Myers attended two retreats, "Tao Holistic Healing" and "DahnMuDo School";

6. Dahn Foundation, founded by DYHC, which coordinates volunteer activities in fifteen cities, providing "brain education" training to members of those communities and providing support for a community service initiative known as the "Phoenix Project," which Myers attended;

7. BR Consulting NJ, Inc. (hereinafter "BR Consulting"), which licenses proprietary rights to other Dahn related entities and was founded by Ilchi Lee, who is also founder, President, and COO; and

2

8. HSP Ranch, a subsidiary of BR Consulting where Myers attended a "Chunhwa Mediation Tour" at "HSP Earth Village" in July 2008.

Collectively, the defendants are hereinafter referred to as the "Dahn Organization" or "Defendants."

Each motion to dismiss incorporates the other motions to dismiss and, with the exception of a challenge to personal jurisdiction by Dahn World, the motions raise largely identical arguments and issues, which the Court addresses below.

## I. FACTUAL ALLEGATIONS

In his Complaint, Myers alleges that Defendants systematically indoctrinated and defrauded him over the course of a year, from September 2007 until August 2008. The Defendants, he alleges, are interconnected and have conspired to recruit and extort individuals under the auspices of spiritual and physical healing. In this connection, Myers details how his chance interaction with the local ADYC spiraled out of control from membership to indoctrination and extortion, resulting in Myers' assuming debt, quitting his job to work for ADYC, experiencing physical injury, and finally separating from the Dahn Organization after an intervention by "an expert trained in cult dynamics," arranged through his estranged family. Complaint at ¶ 123.

Myers claims that the Defendants falsely represented the physical and mental benefits of their programs when, in fact, Defendants knew that there were no benefits to be obtained from the "healing" exercises they offered. Myers alleges that Defendants falsely represented that their methods of exercise and meditation had been "researched and endorsed" by, among others, the University of California Irvine's Institute for Brain Aging and Dementia, Weill Cornell Medical College, and Harvard University and that

3

Ilchi Lee has been recognized by the United Nations as a "preeminent religious leader" with an advanced degree certifying him as a doctor. Complaint at ¶ 185(b).

Myers further alleges that the programs offered by Defendants were actually used to "erode rational thought processes" so that the Dahn Yoga Masters could sell more programs to participants when they were most susceptible. Complaint at ¶ 56. Myers claims that he, like other Dahn Organization "victims," was targeted because of his vulnerabilities and became isolated from his family and loved ones. Myers recounts several trips and retreats, for which he paid allegedly exorbitant fees, where he participated in exercises intended to induce him to disclose sensitive personal information, which was then transmitted to the Dahn Masters at Myers' local Alexandria chapter, ADYC. This sensitive, personal information was used to exploit him further when he returned home.

In total, Myers claims he spent $23,772 on spiritual healing programs and training sessions. He also claims that he suffered physical injuries at the hands of the Defendants and sustained a variety of financial losses, including the cost of rehabilitation to overcome his indoctrination.

## II. LEGAL STANDARD

In order to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In that regard, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "[c]onclusory allegations

regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). For that reason, a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 555 U.S. at 556. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 129 S. Ct. at 1949 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal citations omitted). The central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," and the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 555.

This basic pleading requirement, applicable to all claims, is further enhanced under Fed. R. Civ. P. 9(b) ("Rule 9(b)"), which requires with respect to fraud claims that a complaint plead "with particularity the circumstances constituting fraud." To satisfy this heightened pleading standard of Rule 9(b), the plaintiff must allege the time, place, and content of the false representations, the person making the representations, and what was gained as a result of the misrepresentations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). "However, a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which he will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those

5

facts." *Proctor v. Metropolitan Money Store Corp.*, 645 F. Supp. 2d 464, 473 (D. Md. 2009) (internal quotations omitted).

### III. ANALYSIS

Defendants move to dismiss counts I-II and counts V-X of the Complaint. The Court addresses each in turn below.

#### A. Counts I and II – RICO and Conspiracy to Racketeer

In order to state a claim under RICO, 18 U.S.C. 1962(c), a plaintiff must allege: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. The plaintiff must also allege that he was injured in his business or property because of the RICO violation. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003). Myers alleges RICO violations predicated on instances of wire fraud and mail fraud.

Defendants move to dismiss the RICO claims because, they argue, the alleged statements underlying the fraud claims are not actionable statements and are not in any event alleged with the required specificity, particularly since the alleged instances of fraud are not attributed to specific Defendants. Plaintiff argues that he has sufficiently alleged actionable fraudulent statements against some Defendants as well as the connection of the other Defendants to the scheme to defraud.

To establish mail and wire fraud, a plaintiff must allege (1) knowing participation in a scheme to defraud and (2) the use of mail or interstate wire facilities in furtherance of the scheme. *Choimbol v. Fairfield Resorts, Inc.*, 428 F. Supp. 2d 437, 443 (E.D. Va. 2006). The "scheme to defraud" element incorporates the requirements of common law fraud and must include material misrepresentations. *Neder v. United States*, 527 U.S. 1,

6

22-23 (1999). Defendants' primary argument is that the Complaint's allegations fail to meet the heightened pleading standards set forth in Rule 9(b).

As summarized above, the Complaint alleges a number of fraudulent misrepresentations. It also alleges the use of mail and wire to make or facilitate the fraud allegedly perpetrated through those misrepresentations. Nevertheless, most of those allegations are not attributed to any particular defendant but to the Defendants collectively, in various combinations. *See, e.g.*, Complaint at ¶¶ 157, 161, 162, 163, 164, and 185(c). For that reason, many allegations fail to satisfy the pleading requirements of Rule 9(b). *Dealers Supply Co. v. Cheil Indus., Inc.*, 348 F. Supp. 2d 579, 589-590 (M.D.N.C. 2004) ("[W]here there are multiple defendants, plaintiffs must allege all claims [of misrepresentation] with particularity as to each defendant.").

The Complaint does, however, attribute the following misrepresentations to ADYC specifically.

- ADYC falsely promised Myers that his physical and emotional ailments would be alleviated through a Dahn Yoga annual membership, "Shimsung" class, and "Initial Awakening" session, knowing that those services would not improve Myers' physical and emotional ailments and that the true purpose of those services was to manipulate Myers through the use of thought reform and cause him to purchase additional Dahn Organization "training" classes. ¶ 155; and

- ADYC falsely promised Myers that his physical and emotional ailments would be alleviated through eleven "healing sessions" that purported to dislodge imaginary "energy blockages" causing his ailments, and convinced Myers to pay $2,000 for

7

those sessions, knowing that those sessions would not improve Myers' ailments.

¶ 160.

The Complaint does not allege specific dates on which the misrepresentations were made but, in all other aspects, the allegations are pled with particularity and the general time frame during which these alleged misrepresentations were made is clear from the Complaint. The Court finds that these allegations, within the context of the Complaint, taken as a whole, are sufficiently specific to place the Defendants on notice of the claims of mail and wire fraud and to survive a motion to dismiss.

Defendants also argue that these allegations fail to satisfy Rule 9(b) because (1) the substance of the alleged misrepresentations is simply "puffery" or unactionable statements about future events and (2) not all Defendants are alleged to have been responsible for these specific statements. The Court rejects both arguments. In determining whether a statement can be viewed as fraudulent, courts have looked to the context in which the misrepresentations were made. What constitutes "innocuous 'puffery' or mere statement of opinion standing alone" in certain contexts "may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation." *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 672 (6th Cir. 2005) (finding statements referring to tires as "safe" were actionable). *See also Casella v. Webb*, 883 F.2d 805, 808 (9th Cir. 1989) (holding that statement that investment in partnership was "sure thing" may have been an actionable misrepresentation under the Securities Act of 1933); *G&M, Inc. v. Newbern*, 488 F.2d 742, 746 (9th Cir. 1973) ("[C]onsidering the gross disparity between prediction and fact, and also considering [defendant's] other misrepresentations

8

and failure to disclose, which were relevant to the accuracy of his prediction, we have no difficulty in finding this 'prediction' to be actionable.").

Here, while some of the Complaint's 211 paragraphs contain allegations of statements that may constitute "puffery," there are sufficient allegations in the Complaint, including those specifically attributed to ADYC, to constitute a misrepresentation of fact for purposes of surviving a motion to dismiss. Taking the allegations in the Complaint as true, the Court concludes that ADYC, as part of a scheme, made statements about its services and products and the measurable benefits that would be derived from those services and products, knowing that those statements were false. *See Dunn v. Borta,* 369 F.3d 421, 431 (4th Cir. 2004) ("[W]hen a seller goes beyond [mere exaggeration of an article's qualities], assigns to the article qualities which it does not possess, does not simply magnify in opinion the advantages which it has but invents advantages and falsely asserts their existence, he transcends the limits of 'puffing' and engages in false representations and pretenses.") (quoting *United States v. New S. Farm & Home Co.,* 241 U.S. 64, 71 (1916)).

The Court also concludes that, contrary to Defendants' assertion, Myers' failure to attribute multiple misrepresentations to each defendant specifically is not fatal to his RICO claim. The scheme that is based on the actionable mail fraud and wire fraud described above pertains and is attributed to all of the Defendants, though specific misrepresentations are themselves adequately alleged to have been made only by ADYC. Nevertheless, a civil RICO claim need not allege that each defendant directly committed predicate acts. Rather, "[t]hese acts may be committed by a variety of persons such that each defendant may not have direct participation in each act but evidence of those acts is

9

relevant to the RICO charges against each defendant because it tends to prove the existence and nature of the RICO enterprise." *Proctor*, 645 F. Supp. 2d at 480 (citing *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992)). The Complaint alleges an enterprise and is replete with allegations that the purpose of the enterprise was to defraud and that the Defendants intended to deceive and defraud Myers. In that connection, the Complaint alleges a network of relationships among Defendants who share, not only common goals and objectives, but in some instances formal legal relationships.

Accordingly, the Court concludes and finds that at this stage Myers has sufficiently pled misrepresentations that were part of a scheme to defraud in violation of the federal mail and wire fraud statutes. The alleged misrepresentations are fact based statements, alleged to be false, or opinions alleged to have no reasonable basis in fact, known to Defendants as such. Myers has therefore adequately pled the "conduct" and pattern of racketeering required under RICO by sufficiently pleading the underlying mail and wire fraud predicate acts.[1]

For all of these reasons, Defendants' motions to dismiss counts I and II of the Complaint are denied.[2] To the extent that Myers intends to rely on misrepresentations by any Defendants, including ADYC, other than those in Complaint ¶¶ 155 and 160, Myers

---

[1] Defendants do not challenge that Myers has adequately pled the additional elements of his RICO claim, specifically the existence of an enterprise.

[2] This conclusion is consistent with *United States v. Ballard*, 322 U.S. 78 (1944), in which the Supreme Court found that a party may not premise a fraud claim on the veracity or lack thereof of religious beliefs. Here, Myers alleges that Defendants knowingly made false statements about products and services to induce him to spend money and partake in certain conduct. Such alleged misrepresentations are not protected under the First Amendment and, therefore, are actionable.

is granted leave to amend count I to attribute specific misrepresentations to specific Defendants, if he can appropriately do so.

### B. Count V – Virginia Consumer Protection Act

Defendants next challenge the state law claims, the first of which is Plaintiff's claim under the Virginia Consumer Protection Act, Virginia Code § 59.1-196 *et seq.* (the "VCPA"). The VCPA prohibits, generally, misrepresenting goods or services. In order to state a VCPA claim, a plaintiff must allege: (1) fraud and that the consumer relied on the fraud; (2) by a supplier;[3] (3) in a consumer transaction. *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). Defendants move to dismiss this claim on the grounds that the elements of Myers' VCPA claim, particularly fraud and reliance, are not pled with the required level of specificity pursuant to Rule 9(b).

"As a claim sounding in fraud, Rule 9(b)'s particularity requirements apply [to the VCPA]." *Nahigian v. Juno Loudoun, LLC*, 684 F. Supp. 2d 731, 741 (E.D. Va. 2010). Accordingly, to survive the motions to dismiss the VCPA claims, Myers must have alleged sufficient facts to allege the time, place, and content of the false representations, the person making the representations, and what was gained as a result of the misrepresentations. *Harrison*, 176 F.3d at 784. Moreover, unlike the mail fraud and wire fraud schemes on which Myers bases his RICO claim, in which each defendant need only

---

[3] Certain Defendants challenge this count on the grounds that they are not alleged to be "suppliers" under the VCPA. A "supplier" is defined by the VCPA as a "seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." Va. Code § 59.1-198. Based on the Court's dismissal of this count as to all Defendants except ADYC, the Court will not address the additional argument that certain Defendants have not been alleged to be "suppliers" under this Act.

11

play a role in the enterprise, a defendant can only be liable for a VCPA violation if he or she actually engaged in the conduct that constitutes fraud. As already described, the Complaint adequately pleads certain misrepresentations by ADYC, and Myers' reliance on those misrepresentations, to meet the heightened pleading standards of Rule 9(b).[4] The Complaint further adequately alleges that ADYC is a supplier of services and that Myers engaged in multiple consumer transactions with ADYC. However, the Complaint fails to allege specific misrepresentations by the other Defendants. Accordingly, the motion to dismiss the VCPA claim will be denied as to ADYC and granted as to all other Defendants, with leave to amend the Complaint to attribute specific misrepresentations to each defendant, if such allegations can be properly made.

### C. Count VI – Fraud

On grounds similar to those relied on as to count V, Defendants also move to dismiss count VI of the Complaint, alleging common law fraud. In order to state a fraud claim, plaintiff must allege: (1) a false representation; (2) of material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; (6) and resulting in damage to the party. *Graham v. RRR, LLC*, 202 F. Supp. 2d 483, 491 (E.D. Va. 2002).[5] The pleading requirements of Rule 9(b) apply to this count as well. For the reasons discussed above, fraud is not pled with sufficient specificity for the Court to determine what defendant made what statement, with the exception of ADYC. For these reasons, the fraud claim will be dismissed as to all Defendants except ADYC, with

---

[4] Each count of the Complaint, including count V, incorporates all earlier allegations of the Complaint.

[5] The parties have asserted their respective positions with respect to this fraud claim based on Virginia law and the Court proceeds on that basis.

leave to amend the Complaint to attribute specific misrepresentations to each defendant, if such allegations can be properly made.

### D. Count VII – Unjust Enrichment Obtained Through Undue Influence

In count VII of his Complaint, Myers alleges "unjust enrichment through undue influence." Virginia law does not recognize the tort of "unjust enrichment obtained through undue influence." Nevertheless, the Court construes this count as a claim for unjust enrichment, as recognized under Virginia law, and views Myers' reliance on his alleged vulnerabilities as merely factual support for his claim.

To establish a claim for unjust enrichment, a plaintiff must allege: (1) a benefit conferred on the defendant by plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; (3) acceptance of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for it. *Nossen v. Hoy*, 750 F. Supp. 740, 744-745 (E.D. Va. 1990). The Court concludes that Myers has not properly asserted a claim of unjust enrichment under the circumstances alleged in the Complaint. There are no allegations that Myers did not receive the services or products he paid for, however worthless or fraudulent he considers them to be. Further, the Court concludes that the other allegations supporting Myers' unjust enrichment claim involve an actual agreement among the parties (*e.g.*, agreement regarding Myers' employment by ADYC) and, for that reason as well, the unjust enrichment claim cannot survive. *Koken v. Aon Risk Services, Inc.*, No. 3:05cv522, 2006 WL 90068, *7 (E.D. Va. 2006) ("Because the Court finds that a valid written contract exists, Koken cannot proceed with her unjust enrichment claim."). Myers' reliance on undue influence does not alter the Court's conclusion. Myers' allegations that

13

Defendants took advantage of his particular vulnerabilities do not remedy the failings in his pleading. Accordingly, Myers' claim for unjust enrichment through undue influence is dismissed.

### E. Count VIII – Intentional Infliction of Emotional Distress

Defendants next move to dismiss Myers' claim for intentional infliction of emotional distress, alleging that it fails to state a claim upon which relief can be granted. To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) the conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991). Though Rule 9(b)'s pleading requirements do not apply to this tort, the Complaint must nevertheless state sufficient facts to make the claim plausible as to each defendant. *Iqbal*, 129 S. Ct. at 1949.

As to ADYC, the Complaint alleges in detail how ADYC intentionally subjected Myers to exercises and manipulations intended to render him vulnerable, exploited those vulnerabilities, and, as a result, Myers required "deprogramming" by an expert in cult dynamics. The Court concludes that these allegations in their totality, when accepted as true, constitute sufficient outrageous conduct and emotional distress to support this claim. However, the Complaint does not allege facts sufficient to satisfy the elements of this claim as to the other Defendants. For example, HSP Ranch is alleged only to have provided the facilities for the retreat sponsored by the Chunhwa Meditation Tour and the Dahn Foundation to have operated the Phoenix Project, a community service initiative.

For these reasons, this count will be dismissed against all Defendants except ADYC, with leave to amend.

### F. Count IX – Negligent Infliction of Emotional Distress

Defendants move to dismiss for failure to state a claim Myers' claim of negligent infliction of emotional distress. To establish a claim for negligent infliction of emotional distress, plaintiff must allege the existence of a legal duty, a breach of that duty, and the proximate causation resulting in injury. A plaintiff must also allege that the physical injury or manifestation was the natural result of "fright or shock" proximately caused by the defendant's negligence. *Villnow v. DeAngelis*, 55 Va. Cir. 324, 225 (Va. Cir. Ct. 2001). Defendants argue that Plaintiff has not alleged that Defendants owed Plaintiff any duty or that Plaintiff suffered any injury as a proximate cause of "fear and shock."

In his Complaint, Myers alleges that he suffered physical injury because, as a result of Defendants' "undue influence" over him, he engaged in physically demanding exercises that caused him direct physical pain. Plaintiff has not alleged, however, that he suffered "fright or shock" and, accordingly, count IX of the Complaint will be dismissed.

### G. Count X – Breach of Fiduciary Duty

Finally, Defendants move to dismiss Myers' breach of fiduciary duty claim. The elements of a breach of fiduciary duty claim are: (1) a fiduciary duty; (2) breach; and (3) damages sustained. *Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660, 666 (1994). Under Virginia law, whether a fiduciary relationship exists is a question of fact. *Allen Realty Corp. v. Holbert*, 227 Va. 441, 447, 318 S.E.2d 592, 595 (1984). A fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the

interests of the one reposing the confidence." *Id.* at 446 (internal quotation marks omitted). *See also Fox v. Encounters Int'l*, No. 05-1139, 2006 WL 952317, *5 (4th Cir. 2006) (unpublished) ("Under Virginia law, whether a fiduciary relationship exists is a question of fact."). Defendants argue they did not owe Plaintiff a fiduciary duty.

Myers does not allege any recognized legal relationship that imposes fiduciary duties on any defendant.[6] Nor does the Complaint allege sufficient facts to establish a fiduciary relationship between Plaintiff and any specific defendant. Accordingly, count X will be dismissed, with leave to amend the Complaint to allege the basis of his fiduciary relationship with each specific defendant, if possible.

### H. Dahn World's Claim of No Personal Jurisdiction

Dahn World argues that the Court lacks personal jurisdiction over it because it was not properly served with process and that, in any event, it does not maintain sufficient minimum contacts with the United States.

Myers bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is challenged. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If, however, as here, the court decides the jurisdictional question based solely on the motions, supporting legal memoranda, and the relevant allegations of the complaint, the plaintiff need only prove a *prima facie* case of personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In deciding whether the plaintiff has proved a *prima facie* case, "the court must construe all relevant

---

[6] The only fiduciary relationship the Court is able to extract from the Complaint is that of employer-employee between Myers and ADYC. The fiduciary duty inherent in that relationship generally runs from employee to employer, however, and not, as Myers asserts here, from employer to employee. *Saks Fifth Ave. v. James, Ltd.*, 272 Va. 177, 630 S.E.2d 304 (2006).

16

pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

Since personal jurisdiction is asserted against Dahn World based on the RICO statute, which authorizes nationwide service of process, the only limits on this Court's ability to exercise personal jurisdiction over Dahn World are those imposed under the Fifth Amendment's due process requirements. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997) ("Because they have been validly served pursuant to RICO's nationwide service provision, 18 U.S.C. § 1965(d), *in personam* jurisdiction over them is established, provided that such jurisdiction comports with the Fifth Amendment."). The Fifth Amendment inquiry requires the Court to consider the defendant's contacts with the United States as a whole and ask whether the defendant would be "unduly burdened" if subjected to jurisdiction. *Noble Sec., Inc. v. MIZ Engineering, Inc.*, 611 F. Supp. 2d 513, 552 (E.D. Va. 2009). Therefore, to satisfy the Fifth Amendment requirements, Myers must show that Dahn World has minimum contacts with the United States generally.

The Court finds as a preliminary matter that Dahn World was properly served under 18 U.S.C. § 1965(d).[7] The only remaining issue, then, is whether Dahn World has

---

[7] Dahn World was served in Arizona at an address listed by the Arizona Corporation Commission as the United States address of Dahn World and the address of Dahn World's agent. Dahn World argues that the individual who accepted service as its agent was not actually its agent, although Dahn World concedes that it received that process. Pursuant to Fed. R. Civ. P. 4(e)(1), which permits service in a manner that follows state law, and Va. Code § 8.02-288, which validates service of process which has reached the person to whom it is directed, the Court finds that service was effective here. At the hearing on June 4, 2010, in response to the Court's inquiries, Dahn World did not pursue its position that service was ineffective.

sufficient minimum contacts with the United States such that the Court's exercise of personal jurisdiction over it is fair and reasonable.

In support of its argument that Dahn World has sufficient minimum contacts, Myers relies primarily on the extensive internet and intranet system that Myers alleges Dahn World controls and actively uses to communicate fraudulent information into the United States. In that connection, the Complaint alleges that the public internet websites and internal intranet are used as tools by Dahn World to enable communication among its yoga centers in the United States, to allow the exchange of information relevant to the scheme to defraud, and to facilitate the scheme to defraud Myers, in particular, by disseminating fraudulent information, fundraising goals, and personal information. The intranet is described as an interactive tool utilized by the Dahn Organization to facilitate its business and perpetuate the alleged fraud. Dahn World, on the other hand, argues that is has no operations or personnel based in the United States, having ceased its business operations in the United States before Myers' alleged involvement with the Dahn Organization. Most of all, Dahn World relies on a declaration submitted by a Dahn World systems administrator who affirms that Dahn World acted only as a third-party vendor of website hosting services and server space and had no role in creating or modifying the intranet or Dahn Yoga website.

The Court concludes, at this stage of proceedings, without an evidentiary hearing, that Myers has met his burden of establishing a *prima facie* case of personal jurisdiction. Dahn World's alleged historical presence in and overall contacts with the United States, its controlling ownership interest in DYHC, and its alleged involvement with technology that facilitates and promotes DYHC's activities at issue in this case, all support a finding

of minimum contacts. Accordingly, the Court denies Dahn World's motion to dismiss for lack of personal jurisdiction, without prejudice to its being renewed based on the evidence as it may ultimately be established. *Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 608 n.19 (D. Md. 2008) ("Of course, if a factual record is developed during this litigation that undermines the conclusion reached here, EDO's motion to dismiss for lack of personal jurisdiction can be renewed.").

## IV.   CONCLUSION

For the above reasons, the Court will grant in part and deny in part the Defendants' motions to dismiss. The motions to dismiss as to counts I and II are denied; the motions to dismiss as to counts V and VI are denied as to ADYC and granted as to all other Defendants, with leave to amend the Complaint; the motions to dismiss as to count VII are granted; the motions to dismiss as to count VIII are denied as to ADYC and granted as to all other Defendants, with leave to amend the Complaint; the motions to dismiss as to count IX are granted; the motions to dismiss as to count X are granted, with leave to amend the Complaint; and Dahn World's motion to dismiss for lack of personal jurisdiction is denied without prejudice.

An appropriate Order will issue.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
July 12, 2010